UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD THOMPSON and
RONALD JORDAN,

        Plaintiffs,

v.                                           Case No. 2:04-cv-204
                                            HON. ROBERT HOLMES BELL

PATRICIA CARUSO,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiffs Richard Thompson and Ronald Jordan, inmates currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Patricia Caruso, the Director of the Michigan Department of Corrections (MDOC).

Plaintiffs' complaint alleges that on May 1, 2002, Defendant issued an order that all legal mail sent to prisoners be opened and inspected by staff outside the presence of the prisoner. (Plaintiffs Complaint, ¶5.) Plaintiffs claim that Defendant's reason behind the legal mail inspections is "to search for biological or other terrorists weapons." *Id* at ¶6. Plaintiffs allege that Defendant's asserted reason for the mail searches is unreasonable because "no terrorists weapons have ever been discovered, nor is there a reasonable possibility any will ever be discovered." *Id.* Plaintiffs claim that the opening of their legal mail has "chilled, impeded upon, and hampered plaintiffs First Amendment right of court access." *Id.* at ¶12. Plaintiffs are suing Defendant in her individual and official capacities and are seeking compensatory and punitive damages, as well as injunctive and declaratory relief.

Presently before the Court is the Defendant's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiffs have filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue

of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant contends that Plaintiffs have failed to state a claim that they were denied access to the courts in violation of their First Amendment rights because they have not shown that they suffered prejudice in a nonfrivolous direct appeal, habeas corpus action, or civil rights action as required by *Lewis v. Casey*, 518 U.S. 343, 353-54 (1996). However, Plaintiffs' complaint alleges a legal mail claim, not an access to courts claim. Plaintiffs are claiming that prison officials opened and read their legal mail outside their presence. Prison officials have a right to open and inspect legal mail for contraband. However, they may not read the mail and must allow the prisoner to be present, upon request, if the envelope is marked as confidential. *Lavado v. Keohane*, 992 F.2d 601, 607-09 (6th Cir. 1993); *see also Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) (court abandoned the *per se* rule that the Constitution requires that the opening and inspection of legal mail be in the presence of the inmate).

Plaintiffs have presented evidence in their affidavits to support their legal mail claim. Plaintiff Thompson avers in his affidavit that on two separate occasions prison officials made comments to him regarding subjects that they only could have known about had they read his legal mail. (Affidavit of Richard Thompson, ¶¶3,6.) Plaintiff Thompson avers specific incidences which present genuine issues of material fact. Furthermore, Plaintiff Jordan avers that upon delivery of his legal mail, the guard delivering the legal mail made small talk about its contents and on one occasion a prison official commented that a pending action by Plaintiff Jordan would not prevail. (Affidavit of Ronald Jordan, ¶¶3,4.) Plaintiffs have presented specific evidence that Defendant's agents read Plaintiffs' legal mail. Therefore it is the opinion of the undersigned that Plaintiffs have stated a

claim upon which relief could be granted and have presented genuine issues of material fact. Nonetheless, the undersigned recommends that portions of Plaintiffs' claim be dismissed as moot.

In her supplementary brief, Defendant asserts that Plaintiffs' claims are moot as to the requested injunctive and declaratory relief. On April 15, 2005, Judge Enslen entered an order stating,

> "that the Michigan Department of Correction is immediately and permanently enjoined from opening (outside the prisoner's presence) the legal mail of any prisoner who properly requests, or has previously requested, that his or her legal mail be opened only in his or her presence."

*Mallory-Bey v. MDOC, et al.* No. 1:04-cv-137, (W.D. Mich. April 15, 2005). Upon receiving notice of this order, Defendant immediately ordered the cessation of the opening of a prisoner's mail outside his/her presence if the prisoner has submitted a request for the special handling of his/her mail.

A case is moot when the issues presented are no longer "live." *Powell v. McCormack,* 395 US 486, 496 (1969). "Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986). Accordingly, it is the opinion of the undersigned that due to Judge Enslen's recent decision and the change of MDOC policy, Plaintiffs' claims for equitable relief are moot.

Finally, Defendant claims that she is entitled to qualified immunity on the remaining portions of Plaintiffs' claim. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 1999 WL 64241 at *5; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

> The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is

>  protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

In *Mallory-Bey v. MDOC, et.al.,* the Honorable Richard A. Enslen decided that *Sallier v. Brooks,* 343 F. 3d 868 (6th Cir. 2003), clearly established that legal mail must be opened in the presence of an inmate at the inmate's request, without regard to security concerns raised by the September 11, 2001, terrorist attacks. In *Sallier*, the Sixth Circuit court stated

> We find that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicates a prisoner's protect legal mail rights. *See Kensu,* 87 F.3d at 174 (referring to a prisoner's right to protect the contents of correspondence with an attorney as a "fundamental right"). *There is no penological interest or security concern that justifies opening such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise.*

*Id*. at 877-78 (emphasis added.)  Therefore, it was clearly established that prisoners have the right to have their legal mail opened in their presence.

Defendant contends that following the terrorist attacks which occurred on September 11, 2001, but prior to the decision in *Sallier*, she reasonably believed that prison officials were justified in changing the mail policy as a result of the increased security concerns.  Generally, any regulation which infringes upon a fundamental right must be justified by a "compelling state interest."  *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972).  However, as prisoners, Plaintiffs' constitutional rights are subject to severe restriction without such a showing.  *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote to close).  *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness."  *Turner v. Safley*, 482 U.S. 78 (1987); *Washington v. Harper*, 494 U.S. 210, 224 (1990).  In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to ensure that "prisoner administrators. . .and not the courts. . .make the difficult judgments concerning institutional operations."  *Turner*, 482 U.S. at 89, quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors, "relevant in determining the reasonableness of the regulation at issue."  482 U.S. at 89-91.  First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.  *Id.*

at 89, quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoners' rights is relevant to the reasonableness issue. *Turner*, 482 U.S. at 90. As stated by the court, this final factor, is "not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that '*no* reasonable method exists by which [prisoners] rights can be accommodated without creating bonafide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

Because Defendant instituted the mail policy in 2002, before *Sallier* was decided, she was not violating any clearly established statutory or constitutional right at that time. Given the increased security concerns, Defendant did not violate Plaintiffs' clearly established rights in concluding that, in light of the September 11, 2001 terrorists attacks, a more stringent mail policy was needed at the prison. As such, it is the opinion of the undersigned that Defendant should be granted qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Dismissal and/or Summary Judgment (Docket #9) be granted and that this case be dismissed in its entirety.

In addition, should the court adopt the report and recommendation in this case, Plaintiffs' motions for a preliminary injunction and to expedite (docket #19, #22, and #23) are properly denied as moot.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 10, 2005